IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CORNELIUS A. DAVIS,
    Petitioner,

vs.                                             Case No.: 3:05cv105/MCR/EMT

JAMES R. McDONOUGH,[1]
    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Docs. 13, 14). Petitioner replied (Doc. 23).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties. Petitioner was charged in the Circuit Court for Escambia County, Florida, with one count of felony battery (*see* Doc. 14, Ex. B at 57). Petitioner entered a written plea agreement pursuant to which the parties agreed that he would plead nolo contendere as charged, he would be adjudicated guilty, and the State would

---

[1]James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

recommend a sentence of three (3) years in state prison (*id*. at 57-60). On December 23, 2003, he was sentenced to a three-year term of incarceration (*id.* at 53–55). Petitioner did not directly appeal his judgment of conviction and sentence.

On June 28, 2004, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 14, Ex. C). The trial court denied the motion November 3, 2004 (*id.*, Ex. D). Petitioner appealed the decision to the Florida First District Court of Appeal (First DCA), and the appellate court affirmed per curiam without opinion on February 9, 2005 (*id*., Ex. G). Davis v. State, 894 So. 2d 246 (Fla. 1st DCA Feb. 9, 2005) (Table).

Petitioner filed the instant habeas action on March 21, 2005 (Doc. 1 at 6). Respondent concedes that the petition is timely and that Petitioner has exhausted his state court remedies (Doc. 13 at 3, 4, 11).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–375, 390–399, 120 S. Ct. at 1499–1503, 1511–1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–413, 120 S. Ct. at 1518–1523). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by

a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." Section 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

  A.  Ground one:  Counsel performed ineffectively by failing to investigate the
  fact that the victim and the State's eyewitness recanted their statements.

(*see* Doc. 1 at 4). Petitioner alleges that the State's eyewitness and the victim recanted their statements regarding the battery (*id*.). He alleges that one week after he was released from pre-trial detention and returned home with the victim, the victim spoke to the prosecuting attorney and recanted her prior statements (*see* Doc. 23 at 2). Petitioner alleges this conversation occurred prior to the victim's deposition (*id*.). Petitioner also alleges that the State's eyewitness recanted her prior statement regarding the battery (Doc. 1 at 4). Petitioner states that counsel's failure to discover the recantations led him to plead guilty to a crime he did not commit; and if his counsel had discovered the recantations, there would have been no evidence upon which a reasonable juror could have convicted him since there was no physical evidence of a battery (Doc. 23 at 2-3).

    1.  Clearly Established Supreme Court Law

  The legal standard clearly established by the Supreme Court for ineffectiveness of counsel claims is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Fugate</u>, 261 F.3d at 1216-17; <u>Wellington</u>, 314 F.3d at 1260 (both citing <u>Williams</u> and <u>Strickland</u>). The two components of an ineffectiveness claim under <u>Strickland</u> are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. <u>Strickland</u>, 466 U.S. at 697; <u>Wellington</u>, 314 F.3d at 1260. In assessing performance, the court considers whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 686. "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Petitioner bears the heavy burden of persuasion to disprove that counsel's performance was competent and reasonable by showing that no competent counsel would have chosen the course of action that his counsel in fact took. <u>Chandler v. United States</u>, 218 F.3d 1305, 1314-15 & n.15 (11th Cir. 2000); <u>Fugate</u>, 261 F.3d at 1217 (citation omitted).

  "In general, defense counsel renders ineffective assistance when [he] fails to investigate adequately the sole strategy for a defense or to prepare evidence to support that defense." <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1226 (11th Cir. 2002) (citations omitted). Counsel's duty to

investigate "requires that counsel 'conduct a substantial investigation into any of his client's plausible lines of defense.'" *Id.* (citation omitted). "[A] particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; *see also* Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000); Holsomback v. White, 133 F.3d 1382, 1387 (11th Cir. 1998). Indeed, no absolute duty exists to investigate particular facts or a certain line of defense. Williamson, 221 F.3d at 1180; Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000). In evaluating counsel's investigation, the Eleventh Circuit has held that "counsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." Chandler, 218 F.3d at 1318 (citing Strickland, 466 U.S. at 690-91. Furthermore,

> [t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

Strickland, 466 U.S. at 691; *see also* Michael v. Crosby, 430 F.3d 1310, 1321 (11th Cir. 2005).

In any ineffectiveness case, including when a defendant challenges a guilty plea based upon allegations of ineffective assistance of counsel, the focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *See* Strickland, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead

>    guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769-70, 90 S.Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

Furthermore, "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each.  Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (citations omitted).  In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56-57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting McMann, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano, 921 F.2d at 1150-51.  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  Hill, 474 U.S. at 59.  Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id.* at 59–60.  While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must come forth with objective evidence to show that but for counsel's errors he would not have accepted the plea offer, and would have insisted on going to trial.  *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro

v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). Conclusory, after-the-fact statements that Petitioner would not have pled guilty do not meet this requirement, nor is it sufficient to say that Petitioner would have received a less harsh sentence had he not accepted the plea offer. *See* Diaz, 930 F.2d at 835; *see also* Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

2. Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (*see* Doc. 14, Ex. C at 3-5). In his motion he stated that the sole witness for the State recanted her statement to police by stating that she witnessed an argument between Petitioner and the victim, but she did not observe any physical contact between them (*id*. at 4). Petitioner further stated that the victim, who was his girlfriend, admitted in a telephone conversation with the prosecuting attorney one week after the incident that the only reason she told police that Petitioner attacked and hit her was to retaliate against him because she was jealous when Petitioner attempted to talk to her girlfriend (*id*.). Petitioner stated that he would not have pled guilty if his counsel had diligently investigated his case and prepared a defense that Petitioner was innocent of the battery charge (*id*. at 5).

In its written decision denying Petitioner's claim, the state court cited the two-prong Strickland standard as applicable to claims of ineffective assistance of counsel. Thus, Petitioner is entitled to federal habeas relief only if he establishes that the state court decision was an unreasonable application of Strickland or was based upon an unreasonable determination of the facts.

The state court made the following factual findings:

> Contrary to the assertions of the Defendant, the eyewitness and the victim did not "recant" their statements that the Defendant had struck the victim. During the deposition of the eyewitness, the eyewitness testified under oath that she saw the Defendant strike the victim.[FN 2] Later in the deposition she did not specifically recant such testimony, but gave conflicting testimony that she could not be sure if the Defendant actually hit the victim.[FN 3] Additionally, the victim in the instant case failed to recant her testimony. During her deposition she stated that she had told her uncle [that] Defendant had not hit her because she didn't want her uncle or her dad to know that a man hit her.[FN 4] This statement by the victim does not serve to "recant" her previous testimony that the Defendant struck her.

(Doc. 14, Ex. D at 67). The footnotes referred to pages of the deposition transcripts of Cynthia Emanuel, the eyewitness, who was deposed on August 25, 2003, and Lakeshia M. Fisher, the victim,

who was deposed on October 30, 2003 (*id*.).  Based upon these findings, the state court concluded that defense counsel properly investigated the case; therefore, he was not ineffective (*id*. at 67-68).

The record establishes that Petitioner's counsel did investigate the case by deposing the eyewitness and the victim (*see* Doc. 14, Ex. D at 71-102).  In the deposition of the eyewitness, counsel explored whether she saw Petitioner actually strike the victim (*id*. at 84).  The eyewitness admitted that she did not see Petitioner make physical contact with the victim; but she persisted in her statement that she saw Petitioner swing at the victim twice (*id*. at 84).  This evidence conclusively refutes Petitioner's assertion that defense counsel failed to discover the eyewitness' statement that she did not see Petitioner actually hit the victim.

As to the victim, Petitioner provided no factual support, either to the state post-conviction court or to this court, for his assertion that the victim recanted to the prosecuting attorney in a telephone conversation one week after the incident.  Furthermore, the record establishes that counsel asked the victim during her deposition whether she maintained a relationship with Petitioner after the battery, and whether, during that time, she told people that Petitioner never hit her (*id*. at 94-96, 99).  The victim stated that on the morning after the incident, she and her uncle went to the jail to assist in bailing Petitioner out, and she told her uncle that Petitioner did not hit her (*id*. at 94).  The victim also stated that while she was still maintaining a relationship with Petitioner, she told her father that Petitioner did not hit her (*id*. at 99).  The victim stated, "I wouldn't tell my uncle my dad or nobody that a man hit me." (*id*. at 94).  This record establishes that counsel did investigate whether the victim gave contradictory statements during the period of time she and Petitioner were maintaining a relationship, regarding whether Petitioner struck her.  Therefore, Petitioner has failed to establish that counsel's investigation was constitutionally deficient.

> B.    Ground two:   Counsel coerced Petitioner to plead guilty by threatening that if Petitioner went to trial and rejected the State's plea offer of a three-year sentence, Petitioner would be sentenced to eight years.

Petitioner alleges that his counsel coerced and threatened him to accept the State's plea offer of three years by telling him that if he did not accept the offer and went to trial, he would be sentenced to eight years (Doc. 1 at 4).  In his reply to Respondent's answer, Petitioner alters his

claim to allege that counsel told him he would receive a <u>ten</u> year sentence if he went to trial (Doc. 23 at 3).

        1.       Clearly Established Supreme Court Law

The legal standard applicable to claims of ineffective assistance of counsel is set forth *supra*.

        2.       Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion; however, in addition to the "threat" of an eight- or ten-year sentence, Petitioner alleges that his counsel threatened that Petitioner "would be on his own" if he rejected the plea offer (Doc. 14, Ex. C at 5-6). In the written decision denying Petitioner's claim, the state court made the following factual findings:

> . . . Defendant signed a document entitled "Sentence Recommendation" which is the plea agreement. The "Acknowledgment of Defendant" section located immediately before the Defendant's signature in the document, provides, in relevant part: "If represented by an attorney, I am satisfied with the attorney's advice and services and ***my attorney has not compelled or induced me to enter into this plea agreement by any force, duress, threats, pressure or promises***."[FN 6] Additionally, during the hearing of December 23, 2003, the Court specifically asked Defendant if he had read over, signed, and fully understood the plea agreement. Defendant answered in the affirmative.[FN 7] The Court further inquired of Defendant if he was entering the plea of his own free decision. Defendant answered, "Yes, sir."[FN 8] Therefore, Defendant's claim of coercion is refuted by the record. <u>See</u> <u>id.</u>

(Doc. 14, Ex. D at 68-69). The footnotes are references to the written plea agreement and the transcript of the plea and sentencing hearing. In rejecting Petitioner's claim, the state court applied the two-prong <u>Strickland</u> standard, as noted *supra*.

This court defers to the Rule 3.850 court's factual findings, as Petitioner has not shown by clear and convincing evidence that the findings were unreasonable. *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); <u>Callahan v. Campbell</u>, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2). Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence."). Based upon the fact that Petitioner stated in the plea agreement that his counsel had not compelled or induced him to enter into the plea agreement by any force, duress, threats, pressure or promises, as well as

Petitioner's sworn statement that it was his own free decision to enter the plea (*see* Doc. 14, Ex. D at 108-115), Petitioner has failed to demonstrate that his counsel coerced or threatened him into pleading guilty.  Furthermore, the fact that Petitioner acknowledged in the plea agreement that he understood that the maximum period of imprisonment for the crime of battery was five years (*see id.* at 108) belies his claim that he pleaded guilty because he believed he would receive an eight- or ten-year sentence if he went to trial.  Petitioner has failed to satisfy the two-prong Strickland standard; therefore, the state court decision denying his claim was not unreasonable.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James V. Crosby, Jr. as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola this 29th day of November 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**